**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL SCHMALTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19-cv-00677-AGF |
| | ) | |
| ALACIOUS MCKISSIC, et al., | ) | |
| | ) | |
| Defendants, | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on review of self-represented plaintiff Michael Schmaltz's amended complaint pursuant to 28 U.S.C. § 1915. For the reasons discussed below, the Court will dismiss this action for lack of subject matter jurisdiction, and for failure to state a claim.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir.

2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Background

On March 27, 2019, plaintiff filed a pro se complaint naming Alacious McKissic and Elma McBroom as defendants. (Docket No. 1). Along with the complaint, plaintiff filed a motion for leave to proceed in forma pauperis, and a motion for appointment of counsel. (Docket No. 2; Docket No. 3).

In the complaint, plaintiff stated that on October 22, 2018, he reported a rodent infestation to defendant McKissic. (Docket No. 1 at 7). He informed McKissic that the rodents had caused him to fall and hurt himself. McKissic purportedly responded by threatening to throw plaintiff out

2

of the building because plaintiff had damaged apartment property. Plaintiff asserted that McKissic "went on a rampage," threatening and harassing him. Plaintiff stated that he was scared and called the police, but the two officers who responded advised him "that they had no jurisdiction over the matter." (Docket No. 1 at 7-8).

Following the incident on October 22, plaintiff stated that he was "harassed and threatened for a period of three months" by unnamed staff and tenants. (Docket No. 1 at 8). Plaintiff alleged that McKissic "later used this incident to have [him] illegally evicted from [his] apartment."

Late in the morning of October 23, 2018, defendants McKissic and McBroom knocked on plaintiff's apartment door. They "announced that they were entering the apartment," even though plaintiff advised them he was in the shower and to call to make an appointment. (Docket No. 1 at 9). Plaintiff alleged that McKissic and McBroom "illegally unlocked [his] door and barged into the room," even though he was naked. Moreover, when McKissic opened the door, she knocked over a table, causing damage to plaintiff's laptop computer, his notebook computer, his cellphone, and a recovery CD.

Even before McKissic and McBroom entered his apartment, plaintiff called 911. Eventually, two St. Louis police officers arrived. Plaintiff told the officers he was running late for a medical appointment, so they told him that they would leave a report number and their names at the front desk. However, plaintiff asserted that he never received this information.

On October 29, 2018, at approximately 5:00 p.m., front desk personnel at Stamping Lofts granted "two St. Louis deputies" access to his apartment without a warrant, because defendant McBroom had ordered him placed into a psychiatric facility. Plaintiff alleged that McBroom did this "purely to harass him." He asked the deputies for a warrant or an order signed by a judge. When the deputies could not produce such a document, plaintiff advised them that they were in

3

his apartment illegally and asked them to leave. At this point, plaintiff claimed that "the deputies became agitated and violent." He also accused the deputies of assaulting him "with mace and physical force," and also tasering him, despite him behaving "very peacefully." (Docket No. 1 at 11). These deputies were not identified in the original complaint, or named as defendants.

In the original complaint, plaintiff sought $1,197 for his damaged property; $50,000 in damages for emotional suffering; and a further $100,000 for pain and suffering. He also wanted all his damaged property to be replaced, and for defendant McKissic to pay his rent and utilities for the next year. Furthermore, he wanted McKissic to pay all other expenses associated with finding new accommodations, including hotel costs. (Docket No. 1 at 12).

On August 1, 2019, the Court ordered plaintiff to show cause why his case should not be dismissed for lack of subject matter jurisdiction. (Docket No. 4). Specifically, the Court noted that plaintiff's stated basis for federal question jurisdiction – 18 U.S.C. § 241 – was a criminal statute that did not provide him with a private right of action. Furthermore, the Court noted that plaintiff had not stated a claim pursuant to 42 U.S.C. § 1983 because he had not alleged that defendants were acting under color of state law, or that they had deprived him of a constitutionally protected federal right. Finally, the Court explained that diversity jurisdiction was not present, because he had not established diversity between the parties. The Court directed plaintiff to submit a response within thirty days.

Plaintiff never submitted a show cause response. Instead, he filed an amended complaint on the same day that the Court ordered him to show cause. (Docket No. 6).

**The Amended Complaint**

Plaintiff's amended complaint is typewritten on a Court-provided civil complaint form. He names the following defendants: Laurie Phillips; Nancy Yohe; John Belcher; Terry Brown;

4

Alacious McKissic; and Elma McBroom. (Docket No. 6 at 1). Plaintiff states that the Court has federal question jurisdiction pursuant to 18 U.S.C. § 24, "Conspiracy Against Citizens Rights." (Docket No. 6 at 3).

In the "Statement of Claim" section of the form complaint, plaintiff states that on October 15, 2018, he saw a rodent. (Docket No. 6 at 6). While attempting to exterminate the rodent, he fell backwards off a chair, damaging the door. When he reported the incident to building manager McKissic, she told him that she was going to have him evicted. In response, plaintiff states that he called the police to report "the threat."

On October 17, 2018, plaintiff claims that defendants McKissic and McBroom entered his apartment with a master key, breaking his computer, phone, and several computer discs. According to plaintiff, the police "responded and did nothing." Plaintiff alleges that both the Stamping Lofts apartment and the Saint Patrick Center "retaliated with a retaliatory eviction notice."

On October 22, 2018, plaintiff states that Stamping Lofts management led two St. Louis deputies into his apartment. The deputies allegedly advised plaintiff that defendants Belcher and McBroom had "sent them to put [him] in a mental institution." According to plaintiff, Belcher works at the Saint Patrick Center, where he is supposed to get the funds for rent assistance, bus passes, and medication assistance. (Docket No. 6 at 8). Meanwhile, plaintiff states that McBroom "was a person from a different program who had no reason to be communicating with [him] at all." When plaintiff insisted that the deputies show him a warrant or court order, he claims that he was pepper sprayed, tasered, and beaten. (Docket No. 6 at 6). Afterwards, he states that he was taken by ambulance to a "mental institution" at Barnes Jewish Hospital.

On October 28, 2018, plaintiff claims that defendant "Yohe and her husband drove past…[his] apartment building[,] laughing and taunting [him] in a white pick up truck." Plaintiff

5

states that Yohe is the program director at the Saint Patrick Center, and is in charge of the programs. (Docket No. 6 at 8).

During this period of time, plaintiff states that he was attempting to appeal his eviction. (Docket No. 6 at 6). Meanwhile, he claims that the Saint Patrick Center "continued to harass [him] and deny [him] proper assistance." He asserts that he fought his eviction and should have won, but was forced out of his apartment.

Plaintiff states that he had to live in a hotel for four months. During that period, he alleges that the Saint Patrick Center "continued the abuse and assault by repeatedly not paying the bill every three to four days." Plaintiff further states that he was unable to make medical appointments, unable to receive medication, and unable to prepare food.

Plaintiff asserts that defendant Brown, a housing caseworker employed by the Saint Patrick Center, led him to several apartments. (Docket No. 6 at 2, 6, 8). However, because plaintiff owed money on past utilities, he was denied. (Docket No. 6 at 6). Plaintiff asserts that Brown knew this, and that he informed Brown that she would have to use the utilities assistance program. Plaintiff further claims that Brown never "attempted to assist [him] with the rent assistance program," and that Brown was "always leading [him] in different directions [and] refusing to utilize programs that" would help him with medications or doctors not covered by his insurance. Plaintiff also asserts that Brown would harass him by telling him that the Saint Patrick Center could not keep paying his hotel bill. (Docket No. 6 at 8).

Plaintiff acknowledges that the Saint Patrick Center "would sometimes help." (Docket No. 6 at 6). Nevertheless, he also contends they always claimed to be too busy to assist him, even though they receive both state and federal grants. Plaintiff further accuses the Saint Patrick Center

of using hundreds of millions of dollars in government grants "for self enrichment." (Docket No. 6 at 6-7).

Plaintiff states that he has "made numerous complaints" to defendant Phillips, who is the director in charge of "[these] persons of [interest]," as well as to defendants Yohe, Belcher, and numerous elder abuse hotlines. (Docket No. 6 at 8). He contends that the Saint Patrick Center "has been hostile to [him] for reasons [he does] not understand or know." As a result, he states that he has been placed back into a nursing home, where his physical and mental health have deteriorated.

For relief, plaintiff seeks to have the Saint Patrick Center continue providing him rent assistance, medication assistance, transportation assistance, and utility assistance. (Docket No. 6 at 9). He also wants the Court to intervene and place all government assistance that the Saint Patrick Center is contracted to administer into a trust fund. Finally, plaintiff seeks to have the Saint Patrick Center stop interfering in his investigation of their programs, and to stop using spyware on his phone and computer.

**Discussion**

Plaintiff has filed an amended complaint against various defendants accusing them of failing to provide him with rental, medical, and utility assistance. This amended complaint replaces the original complaint plaintiff filed on March 27, 2019. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect"). Like the original complaint, however, the amended complaint does not establish the Court's subject matter jurisdiction over this matter. Moreover, plaintiff has failed to state a claim upon which relief can be granted. As such, for the reasons discussed below, this action must be dismissed without prejudice.

7

### A. Subject Matter Jurisdiction

Subject matter jurisdiction refers to a court's power to decide a certain class of cases. *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799 (8th Cir. 2006). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). *See also Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute"). The presence of subject matter jurisdiction is a threshold requirement that must be assured in every federal case. *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990). *See also Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) ("The threshold requirement in every federal case is jurisdiction and we have admonished the district court to be attentive to a satisfaction of jurisdictional requirements in all cases"). As such, the issue of subject matter jurisdiction may be raised at any time, by any party or the court. *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 982 (8th Cir. 2009).

Federal courts have subject matter jurisdiction over both federal question cases and diversity of citizenship cases. *See Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation*, 495 F.3d 1017, 1020 (8th Cir. 2007) (finding that subject matter jurisdiction is lacking if neither diversity of citizenship nor federal question jurisdiction applies); and *McLaurin v. Prater*, 30 F.3d 982, 984-85 (8th Cir. 1994) (noting that Congress has directed that district courts shall have jurisdiction in both federal question and diversity cases). Here, plaintiff asserts that his case arises under federal question jurisdiction. As explained below, however, plaintiff has not shown that either federal question or diversity jurisdiction exists.

B.  **Federal Question Jurisdiction**

Federal question jurisdiction gives district courts "original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States." *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1188 (8th Cir. 2015). *See also* 28 U.S.C. § 1331. Whether a claim arises under federal law is determined by reference to the "well-pleaded complaint." *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 329 (8th Cir. 2016). The well-pleaded complaint rule provides that jurisdiction exists only when a federal question is presented on the face of a plaintiff's properly pleaded complaint. *Markham v. Wertin*, 861 F.3d 748, 754 (8th Cir. 2017). *See also Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014) ("Under the well-pleaded complaint rule, a federal question must exist on the face of the plaintiff's properly pleaded complaint in order to establish federal question subject matter jurisdiction"). Plaintiff's complaint must establish "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998).

A claim brought pursuant to 42 U.S.C. § 1983 "arises under federal law and will support federal-question jurisdiction pursuant to § 1331." *Convent Corp. v. City of North Little Rock, Ark.*, 784 F.3d 479, 483 (8th Cir. 2015).

Here, plaintiff asserts that the Court has federal question jurisdiction pursuant to 18 U.S.C. § 24, "Conspiracy Against Citizens Rights." (Docket No. 6 at 3). It is a bit unclear if plaintiff is actually referring to 18 U.S.C. § 24, which contains definitions relating to a federal health care offense, or if he meant to refer to 18 U.S.C. § 241, as he did in the original complaint, which provides the elements of the crime of conspiracy against rights. In either event, neither statute gives this Court jurisdiction over his claims.

9

As previously explained in the Court's show cause order, 28 U.S.C. § 241 is a criminal statute that prohibits two or more individuals from conspiring to violate the civil rights of another. *See United States v. Blakeney*, 876 F.3d 1126, 1131 (8th Cir. 2017). However, "the fact that a statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). Rather, like substantive federal law itself, a private right of action to enforce a federal law must be created by Congress. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). To that end, a criminal statute may provide an implied right of action if Congress intended to do so in enacting the statute. *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 407 (8th Cir. 1999). In order to determine whether a private right of action exists, a court must consider four factors:

> (1) whether the plaintiff is a member of the class for whose benefit the statute was enacted; (2) whether Congress intended, explicitly or implicitly, to create such a remedy; (3) whether a private remedy is consistent with the underlying legislative scheme; and (4) whether a private right based on a federal statute would interfere with an area relegated to state law.

*Id*. at 408-09 (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)). The "ultimate issue" of this analysis is the intent of Congress, and "unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Thompson v. Thompson*, 484 U.S. 174, 179 (1988).

With regard to 18 U.S.C. § 241, it is a bare criminal statute that does not provide for a private right of action. *See U.S. v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998) ("Courts have repeatedly held that there is no private right of action under [18 U.S.C.] § 241, even though the statute allows federal authorities to pursue criminal charges"); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (stating that only a United States prosecutor can bring a complaint under 18 U.S.C. §§ 241-242, and that the "statutes do not give rise to a civil action for damages"); and *Storm-Eggink*

*v. Gottfried*, 409 Fed. Appx. 426, 427 (2nd Cir. 2011) (stating that "nothing in the language or structure of [18 U.S.C.] § 241 suggests that Congress intended to create a private right of action"). Therefore, this section cannot provide a basis for federal question jurisdiction.

Likewise, 18 U.S.C. § 24 does not provide a private right of action. It is a criminal statute that provides the definitions for "Federal health care offense" and "health care benefit program." Nothing in the statutory language indicates a Congressional intent to provide for a civil action for damages. Indeed, it is unclear from plaintiff's allegations why this statutory section is relevant at all. As such, this section also cannot provide a basis for federal question jurisdiction.

Though plaintiff has not alleged a violation under 42 U.S.C. § 1983, the Court notes that even if he had, he has failed to state a claim. "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." *Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 934 (8th Cir. 2016). Specifically, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). A plaintiff bringing a § 1983 action must include in his complaint "either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Brooks v. Roy*, 776 F.3d 957, 960 (8th Cir. 2015).

Here, plaintiff has not alleged that any of the defendants are state actors or that they were acting under color of state law. Rather, defendant McKissic is an apartment manager, while the remaining defendants are employed by or affiliated with the Saint Patrick Center. Though plaintiff is not particularly clear on this point, it appears from his "Statement of Claim" that the Saint Patrick Center is a local charitable organization that was providing plaintiff housing assistance. In other

11

words, the Saint Patrick Center is not alleged to be a state agency. Furthermore, none of the defendants are alleged to be public officials, and there is no indication that any of these private-party defendants acted under color of state law. *See Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009) (stating that a private party may only be liable under § 1983 "if it is a willful participant in joint activity with the State or its agents"); and *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993) (explaining that in order to state a claim against a private party under § 1983, the plaintiff "must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor"). Finally, plaintiff's brief mention of the Saint Patrick Center receiving state grants does not make it into a state agency, because there is no indication that the state directed the Saint Patrick Center's actions or were involved in its decisions. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936 (1982) (explaining that the "state action requirement" works to avoid "imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed").

Even if plaintiff had demonstrated that defendants acted under color of state law, his claim would still fail, because he has not shown that he was deprived of a constitutionally protected federal right. Plaintiff points to no specific constitutional violation, and the Court cannot find one in the facts he has presented. Thus, plaintiff has failed to establish either element of a claim pursuant to 42 U.S.C. § 1983. As such, § 1983 does not provide a jurisdictional basis.

By and large, federal question jurisdiction is invoked by a plaintiff pleading a cause of action created by federal law, such as claims under 42 U.S.C. § 1983. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). However, in certain cases, federal question jurisdiction will also lie over state law claims implicating significant federal issues. *Id*. *See also Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009)

("Federal jurisdiction may be found from a complaint if adjudication of a state claim would turn on a federal constitutional or other important federal question, even where only state law issues have been pled").

As previously noted, plaintiff's fact are insufficient to support a claim under 42 U.S.C. § 1983. Nothing in his "Statement of Claim" provides a separate basis for federal question jurisdiction. That is, with the exception of the federal criminal statutes noted above, plaintiff refers the Court to no federal statute, federal treaty, or constitutional provision as being at issue in this case. He is not suing the federal government, a federal officer, or a federal agency. He also does not claim that these alleged incidents took place on federal property or involved federal employees. In short, there is nothing in the amended complaint to demonstrate "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." *See Williams*, 147 F.3d at 702. Therefore, the Court lacks federal question jurisdiction over plaintiff's case.

### C. Diversity Jurisdiction

"Under 28 U.S.C. § 1332(a), district courts have original diversity jurisdiction over civil actions when the matter in controversy exceeds $75,000, without considering interest and costs, and when the citizenship of each plaintiff is different from the citizenship of each defendant." *Ryan ex rel. Ryan v. Schneider Nat. Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001). A complaint making a good faith allegation of the jurisdictional amount is sufficient to confer jurisdiction. *Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, 620 F.3d 926, 931 (8th Cir. 2010). However, a "complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Id. See also Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002). "The legal certainty standard is met where the legal impossibility of recovery is so certain as virtually

to negative the plaintiff's good faith in asserting the claim." *Peterson v. The Travelers Indem. Co.*, 867 F.3d 992, 995 (8th Cir. 2017).

"Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). For purposes of diversity, state citizenship requires an individual's physical presence in the state coupled with an indefinite intention to remain there. *Blakemore v. Missouri Pac. R.R. Co.*, 789 F.2d 616, 618 (8th Cir. 1986).

In this case, plaintiff has failed to establish the diversity of the parties. As plaintiff is a citizen of Missouri, he must demonstrate that none of the defendants are also Missouri citizens. However, to the extent that plaintiff has provided addresses for the Missouri defendants, those addresses are located in St. Louis, Missouri. Certainly, he has done nothing to show that none of the defendants "holds citizenship in the same state where…plaintiff holds citizenship." *See OnePoint Solutions*, 486 F.3d at 346. Therefore, the Court lacks diversity jurisdiction over plaintiff's case.

### D. Failure to State a Claim

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014). In order to state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft*, 556 U.S. at 679. That is, the complaint must contain enough factual allegations to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion

14

couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). "While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

In this case, plaintiff has failed to state a claim against any of the named defendants. For instance, as to defendants Phillips and Yohe, plaintiff provides only that they are directors in charge of programs and people at the Saint Patrick Center. Nothing more is presented in terms of "the nature and basis or grounds for a claim" against them. As to defendants Belcher, Brown, and McBroom, all three appear to have worked with plaintiff in accessing services and programs. Plaintiff variously accuses them of not helping him, not helping him enough, or not helping him in the way he desires. None of the allegations against these defendants, however, establishes that they have committed any wrongdoing or misconduct against plaintiff. That is, plaintiff never demonstrates a plausible claim for relief, or provides facts to lift his amended complaint above the speculative level. Finally, with regard to defendant McKissic, the allegations against her regarding harassment, retaliatory eviction, and damaging property are vague, conclusory, and require speculation on the part of the Court, rather than providing a plausible claim for relief. Therefore, plaintiff has failed to state a claim upon which relief can be granted.

### E. Preservice Dismissal

As noted above, the issue of subject matter jurisdiction may be raised at any time, by any party or the court. *Gray*, 567 F.3d at 982. The burden of proving subject matter jurisdiction belongs to the plaintiff. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). In this case, plaintiff has not carried his burden of establishing the Court's subject matter

jurisdiction over this action. The federal criminal statute he proposes as a basis for federal question jurisdiction does not provide a private right of action. Furthermore, there is no other federal statute, federal treaty, or constitutional provision implicated by plaintiff's factual allegations. Plaintiff has also failed to demonstrate diversity between the parties, meaning that he has not established diversity jurisdiction either. Therefore, the Court must dismiss this action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

Moreover, pursuant to 28 U.S.C. § 1915, the Court is required to dismiss a case at any time it determines that a complaint is frivolous, malicious, or fails to state a claim. Here, plaintiff's amended complaint fails to state a claim against any of the defendants. For this reason as well, the Court must dismiss this action.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED** without prejudice for lack of subject matter jurisdiction and for failure to state a claim. *See* Fed. R. Civ. P. 12(h)(3); and 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 27th day of April, 2020.

                                              AUDREY G. FLEISSIG
                                              UNITED STATES DISTRICT JUDGE